**LaMonica Herbst & Maniscalco, LLP**
3305 Jerusalem Avenue
Wantagh, New York 11793
(516) 826-6500
Adam Wofse, Esq.
Michael T. Rozea, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| Durr Mechanical Construction, Inc., | Case No.: 18-13968 (SMB) |
| Plaintiff. | |

-----------------------------------------------------------x

| | |
|---|---|
| Durr Mechanical Construction, Inc., | |
| Plaintiff, | |
| - against - | Adv. Pro. No. 19-01308 (SMB) |
| I.K. Construction Inc., | |
| Defendant. | |

-----------------------------------------------------x

### DEBTOR'S MOTION SEEKING THE ENTRY OF AN ORDER (i) GRANTING A DECLARATORY JUDGMENT EXTENDING THE AUTOMATIC STAY TO THE I.K. STATE COURT LITIGATION OR, IN THE ALTERNATIVE, (ii) GRANTING A PRELIMINARY AND PERMANENT INJUNCTION

Durr Mechanical Construction, Inc. (the "Debtor"), seeks the entry of an order: (i) granting a declaratory judgment pursuant to 11 U.S.C. § 362 imposing the automatic stay in the action pending in the Superior Court of New Jersey, Law Division, Essex County ("Superior Court") entitled *I.K. Construction Company, Inc. v. Durr Mechanical Construction Inc., Port Authority of New York and New Jersey, Covanta Essex Company, Covanta Energy Company, Fidelity & Deposit Company of Maryland, Zurich North America, Corporations A, B, C and D, and Corporations E and F*, Docket No. ESX-L-1490-17 (the "I.K. State Court Litigation") and pursuant to 11 U.S.C. § 105(a) extending the automatic stay imposed by 11 U.S.C. § 362 to

Zurich American Insurance Company and its subsidiaries and affiliates, including but not limited to Fidelity And Deposit Company of Maryland (collectively "Zurich"), or in the alternative, (ii) granting a preliminary and permanent injunction enjoining the continued prosecution of the I.K. State Court Litigation, and respectfully represents as follows:

**PRELIMINARY STATEMENT**

The Debtor commenced this action to protect its valuable core claims and interests as they relate to I.K. Construction Inc. ("I.K."). Due to I.K.'s pre-petition breach under the Subcontract, which required the Debtor to incur $1,305,614.00 in *additional* fees and costs to complete the work (which I.K. was contractually required to provide under the Subcontract), the Debtor asserted various affirmative defenses and counterclaims (which constitute core bankruptcy claims) in the I.K. State Court Litigation ("Debtor's Affirmative Claims"). However, due to I.K.'s own inaction in failing to act in accordance with the Disposition Order (which required I.K. to move for stay relief within thirty (30) days of entry of the order (i.e. - by January 9, 2019)), the Debtor was administratively dismissed from the I.K. State Court Litigation.

Now with the Debtor administratively dismissed from the I.K. State Court Litigation, and more importantly, the Debtor's counterclaims worth over $1.3 million also having been dismissed, I.K. is attempting to continue the action against Zurich and the remaining non-debtor defendants. While Zurich has asserted that it is a secured creditor of the Debtor in this action, Zurich is not a fact party to the I.K. State Court Litigation and has no knowledge of the underlying facts as its only involvement in the action is by virtue of administering surety Bonds to the Debtor. Indeed, the only way in which Zurich could defend the action would be through the labor, involvement and knowledge of the Debtor. Thus, by virtue of Debtor's indemnification

obligation to Zurich, and the nature of the claims asserted, the I.K. State Court Litigation is not an action which can be bifurcated between the Debtor and the other defendants, and therefore the stay should be imposed in this action for the reasons more fully set forth below. Indeed, any of the costs incurred by Zurich in the I.K. State Court Litigation will result in an increase in Zurich's secured claim in this bankruptcy case, which comes at the expense of the Debtor's unsecured creditors.

As the Debtor has a contractual duty to indemnify Zurich for any expenses, losses or liabilities incurred in connection with its execution of the Bonds pursuant to the Zurich Indemnity Agreement, any judgment or collection against Zurich arising out of the I.K. State Court Litigation is effectively a judgment against the Debtor in this bankruptcy proceeding, as it will only increase Zurich's secured claim. Thus, notwithstanding the meritless claims asserted by I.K.,[1] and the fact that the Dismissal Order discharged the liens filed by I.K. and only left I.K. with the Remaining Claims, the Debtor is nonetheless contractually bound to indemnify Zurich for its expenses (including attorneys' fees) incurred in defending the I.K. State Court Litigation. Consequently, not extending the stay to Zurich would cause the Zurich secured claim to increase

---

[1] The Adversary Complaint which was filed contemporaneously herewith by the Debtor, also seeks to expunge the Proof of Claim filed by I.K. Succinctly, the vast majority of I.K.'s claims asserted in the Proof of Claim (and state court litigation) are for items allegedly outside the scope of the Subcontract, which include change orders, time tickets, material tickets and payment applications that were rejected (by not only the Debtor, but also denied by Covanta, the owner of the Project) or never presented to Debtor (collectively, the "Alleged Claims"). Not only are the Alleged Claims unsupported by any documentary support, but in certain cases have been disapproved by an engineer hired by a third party to the Subcontract, Covanta, who determined that I.K.'s claims for $335,679.06 of "extra work" was not "extra work" but rather work agreed to be provided under the Subcontract. Further, in another instance, I.K. submitted a $181,015 payment application which related to a time period (March 1, 2016 – March 31, 2016) during which I.K. performed little to no work on the Project because the Subcontract was cancelled on March 2, 2016 and I.K. left the Project early on March 1, 2016. While these statements are by no means exhaustive, they are intended to highlight the baseless nature of I.K.'s claims and the reason why any amounts Zurich would be forced to expend to defend against the Alleged Claims are wasted resources, as the only amounts owed are from I.K. to Debtor due to its breach of the Subcontract.

3

and be a continuous drain of assets from the bankruptcy estate: (a) in indemnifying Zurich for its costs in defending the action (which increases its secured claim against the Debtor); and (b) in causing the Debtor to devote time and resources to the action, thereby causing an immediate adverse economic consequence for the Debtor's estate. Further, if the I.K. State Court Litigation is permitted to continue, it could result in inconsistent results by the fact that the Debtor is unable to assert its claims against I.K., while I.K. is able to proceed against the non-debtor parties without consideration of the Debtor's Affirmative Claims.

Simply stated, the continuation of the I.K. State Court Litigation against Zurich not only permits the continued prosecution of the Remaining Claims while depriving the Debtor's estate of the Affirmative Claims, but it also threatens property of the Debtor's estate, contravenes public interest, threatens to create additional administrative and secured claims, and severely alters the plan process because any potential recovery against non-debtor Zurich would (due to the Debtor's duty to indemnify Zurich) be satisfied by property of the Debtor's estate.

Accordingly, this Court should extend the automatic stay to the non-debtor parties or issue an injunction to enjoin the I.K. State Court Litigation from proceeding to avoid irreparable harm to the Debtor's estate and its creditors.

## FACTS

The relevant facts to this motion are set forth in the Verified Complaint dated July 1, 2019 (the "Verified Complaint") and the exhibits submitted therewith, which are hereby incorporated herein by reference. A copy of the Verified Complaint is annexed hereto as **Exhibit "A"**.[2]

---

[2] Terms not otherwise defined herein shall have the meanings ascribed to them in the Verified Complaint.

**RELIEF REQUESTED AND BASIS FOR RELIEF REQUESTED**

**A.  A Declaratory Judgment Should be Entered to Extend the Automatic Stay to Non-Debtor Parties Because the I.K. State Court Litigation Cannot Proceed Without the Debtor's Affirmative Claims and Zurich has the Right to Seek Indemnification from the Debtor**

1.  Upon the commencement of the Debtor's bankruptcy case, the automatic stay enjoined all entities from, among other things, commencing or continuing any judicial, administrative, or other action proceeding against the debtor that was or could have been commencement before the Petition Date, and taking any actions to "obtain possession of property of the estate" or "recover a claim against the [D]ebtor that arose before the [Petition Date]." 11 U.S.C. § 362(a)(1), (3).

2.  Although the statute contains the phrase "against the debtor," the automatic stay has consistently been extended to the "'unusual situation' where an action against one party is essentially an action against the bankruptcy debtor, as in the case where a third-party is entitled to indemnification by the debtor for any judgment taken against it." *Marcelino v. Mon Cher 57 Inc.*, 2019 U.S. Dist. LEXIS 100176 (Bankr. S.D.N.Y. June 14, 2019) (identifying cases where, due to "unusual circumstances", an extension of the automatic stay is warranted). "Unusual circumstances" are found where "there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 510 (3d Cir. 1996) (*quoting A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

5

3. Further, courts have held that the fact that the debtor is not a named party in the action is not dispositive as to whether the automatic stay will be imposed. In *In re Global Industrial Technologies, Inc.,* 303 B.R. 753, 760 (Bankr. W.D. Pa. 2004), the court explained that the fact that the action did not name the debtor was not dispositive and found that the debtor's interests with respect to certain insurance policies would be "adversely affected and perhaps irreparably harmed" if the state court action at issue was permitted to go forward." *Id.*

4. In the present case, there is an indisputable identity between the Debtor and third-party, Zurich by virtue of the Zurich Indemnity Agreement. Moreover, I.K.'s attempt to continue to prosecute the I.K. State Court Litigation without consideration of the Debtor's Affirmative Claims should be deemed a violation of the automatic stay because the Debtor remains embroiled in this action by virtue of its knowledge of the facts underlying this action and fact that it would be a necessary party which would need to be involved in the preparation of any legal pleadings or trial. *See In re Circle K Corp.*, 121 B.R. 257, 261 (Bankr. D. Az. 1990) (recognizing that actions related to bankruptcy proceedings against debtor's insurer who may be entitled to indemnification under such policy are to be stayed under section 362(a)(3)).

5. Moreover, because only Debtor's operations and actions constitute the basis of the Alleged Claims, there is no possibility that Zurich would choose not to pursue its indemnification rights against the Debtor, and thus this serves as an additional basis for the imposition of the automatic stay to the I.K. State Court Litigation. While the Debtor finds the Alleged Claims to be meritless, I.K. nonetheless seeks to litigate these claims against Zurich, and in the event an adverse judgment is issued in the I.K. State Court Litigation, it is effectively a judgment against the Debtor.

6. Inasmuch as Zurich's involvement in the I.K. State Court Litigation is by virtue of issuing the Bonds, the Zurich Indemnity Agreement is implicated as to the Debtor. Accordingly, the Debtor seeks the entry of an Order pursuant to Bankruptcy Code § 105(a) extending the automatic stay imposed by Bankruptcy Code § 362 to the I.K. State Court Litigation as any action taken against Zurich will have an adverse, and likely irreconcilable, economic effect on the Debtor's estate. Thus, to effectuate the purpose of the automatic stay, it is necessary to extend the automatic stay to Zurich.

### (i) The Remedy of Declaratory Judgment Is Warranted In This Core Proceeding

7. The Declaratory Judgment Act, 28 U.S.C. sections 2201 *et seq.* provides in relevant part that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any such interested party seeking such declaration." 28 U.S.C. § 2201(a). The remedy of declaratory relief is subject to the general jurisdictional provisions of 28 U.S.C. § 1334 and the referral provisions 28 U.S.C. § 157 to bankruptcy courts. *See* COLLIER ON BANKRUPTCY ¶ 3.09[3] (16th ed. 2010); Bankruptcy Rule 7001(9) (establishing that a proceeding to obtain a declaratory judgment is within the definition of bankruptcy adversary proceedings); *see also In re Chateaugay,* 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990) (finding that adversary proceeding by debtor for declaratory judgment constitutes a core proceeding as insurer's actions impacted the assets of the estates and that "[t]his declaratory judgment action also falls within the jurisdiction provided by § 157(b)(2)(O) because it will directly affect the debtor-creditor relationship.").

8. This Court is accordingly empowered to render a declaratory judgment regarding the legal relations between the Debtor and Zurich regarding application of the automatic stay of

section 362(a) of the Bankruptcy Code to the continued prosecution of claims or enforcement or any orders or judgments entered with respect to the asserted claims in the I.K. State Court Litigation.

9. The entry of a declaratory judgment by this Court extending the automatic stay to the prosecution of claims and enforcement of any orders or judgments entered in the I.K. State Court Litigation is warranted because (i) there is such an identity between the Debtor and Zurich, who is to be indemnified by the Debtor, (ii) a judgment in the I.K. State Court Litigation against Zurich will essentially be a judgment against the Debtor in contravention of section 362(a) of the Bankruptcy Code, and (iii) the Debtor's indemnification obligation to Zurich for the asserted claims will unnecessarily deplete significant assets of the estate and in effect these claims and enforcement actions are tantamount to an "action or proceeding against the Debtor" within the meaning of section 362(a)(1) of the Bankruptcy Code in contravention of the automatic stay.

**(ii)  This is a Classic Case for Extension of the Automatic Stay as to Zurich Because of the Immediate Adverse Economic Consequences to the Debtor Which the I.K. State Court Litigation Represents**

10. The U.S. Court of Appeals for the Second Circuit has held that the automatic stay under 11 U.S.C. § 362 applies to non-debtors "when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003)

11. Specifically, the *Queenie,* Court explained that:

> The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate. Examples are a claim to establish an obligation of which the debtor is a guarantor (citation

8

> omitted), a claim against the debtor's insurer (citation omitted), and actions where 'there is such identity between the debtor and a third party defendant that the debtor may be said to be the real party defendant . . .' (citation omitted).

*Queenie,* at 287-88 (2d Cir. 2003) (quoting, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).

12. The legal relations between the Debtor and Zurich with respect to the Remaining Claims asserted by I.K. fall squarely within the principles and rationale for the Second Circuit's extension of the automatic stay in *Queenie* as well as in those cases involving an extension of the automatic stay to non-debtors based upon the debtor's indemnity obligations to non-debtors. Clearly, Zurich's involvement in the I.K. State Court Litigation is by reason of having procured Bonds and its rights enforcing the Zurich Indemnity Agreement, and as such, the stay must be extended to Zurich. *See* Verified Complaint, Exhibit "A".

13. Because the Debtor is contractually indemnified to Zurich there is such an identity between them that the Debtor remains the real party defendant in the I.K. State Court Litigation and any recovery I.K. would obtain would effectively be a judgment against the Debtor. *See Queenie*, 321 F.3d at 288; *see also Ng v. Adler*, 518 B.R. 228, 246-247 (E.D.N.Y. 2014) (affirming bankruptcy court's application of *Queenie* in extending automatic stay to non-debtor corporations); *M.E.S., Inc. v. M.J. Favorito Elec., Inc.*, 2010 U.S. Dist. LEXIS 23809, *6-7 (E.D.N.Y. 2010) (finding that there was "no reason to distinguish this case from Queenie" because it was undisputed that debtors wholly owned the non-debtor corporations to which the automatic stay was sought to apply); *In re Lomas Financial Corp.*. 117 B.R. 64 (S.D.N.Y. 1990); *AP Indus., Inc. v. SN Phelps & Co.* (*In re AP Indus., Inc*.), 117 B.R. 789 (Bankr. S.D.N.Y. 1990)

(staying New York actions against non-debtor third-parties pursuant to sections 362(a) and 105(a) of the Bankruptcy Code as attempts to exercise control over the property of the estate).

14.     Without an order from this Court declaring that the automatic stay extends to the I.K. State Court Litigation against Zurich and/or granting injunctive relief pursuant to section 105(a), Bankruptcy Rule 7065 and Federal Rule 65, the Debtor will be forced to incur additional legal fees and devote more time to defending I.K.'s pursuit of its claims against Zurich and the additional remaining defendants. *See In re Financial News Network*, 158 B.R. at 573 ("The principal policy behind the automatic stay of section 362 is 'to protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had an chance to marshal the estate's assets and distribute them equitably among creditors'" (internal citations omitted)).

15.     Accordingly, the Debtor submits that the I.K. State Court Litigation must be stayed as against Zurich under section 362(a) because continued prosecution of the asserted claims in I.K. State Court Litigation would expose the Debtor to immediate adverse economic consequences nullifying the protections of the automatic stay to the Debtor as a co-defendant in that action and completely undermines the purpose of this bankruptcy filing, as the expenses Zurich is forced to incur will only increase Zurich's secured claim to the detriment of the Debtor's unsecured creditors.

### B. The Court Should Enter a Preliminary and Permanent Injunction to Enjoin the Further Prosecution of the I.K. State Court Litigation

#### (i) The Court's Broad Powers Under Section 105(a) of the Bankruptcy Code

16. Although the automatic stay applies only to actions against the Debtor, Bankruptcy Code § 105(a) confers broad equitable powers on Bankruptcy Courts to achieve the protections and promote the purposes of the Bankruptcy Code. Specifically, Bankruptcy Code § 105(a) provides Bankruptcy Courts with broad authority to enjoin or stay actions that are subject to the automatic stay, as well as actions that may not directly be subject to the automatic stay. S. Rep. No. 95-989, at 51 (1978); H. Rep. No. 95-595, at 341-42 (1977) ("The court has ample . . . powers to stay actions not covered by the automatic stay. Section 105 . . . grants power to issue orders necessary or appropriate to carry out the provisions of title 11."); *AP Indus.*, 117 B.R. at 801 (same); *In re Chanticleer Assocs., Ltd.*, 592 F.2d 70, 74 (2d Cir. 1979) ("The Court's power to preserve its jurisdiction by enjoining proceedings that would remove property from the bankrupt estate is fundamental to the scheme of the Bankruptcy Act").

17. Courts have recognized that the Debtor need not establish irreparable harm or the other traditional equitable grounds for injunctive relief to obtain an injunction under section 105(a) of the Bankruptcy Code because the usual equitable grounds for relief need not be shown where injunctions in bankruptcy cases are authorized by statute. *See AP Indus.*, 117 B.R. at 803; *In re Chateauguay Corp.*, 118 B.R. 19, 23 (Bankr. S.D.N.Y. 1990) (quoting *In re Neuman*, 71 B.R. 567 (S.D.N.Y. 1987)); *Calpine Corp. v. Nev. Power Co.* (*In re Calpine Corp.*), 354 B.R. 45, 48 (Bankr. S.D.N.Y. 2006) (citing *In re Alert Holdings, Inc.*, 148 B.R. 194, 199 (Bankr. S.D.N.Y. 1992)) ("[t]he case law in this district . . . has established a limited exception to the

11

irreparable harm requirement for issuance of a preliminary injunction in the bankruptcy context where the action to be enjoined is one that threatens the reorganization process"); *see also Adelphia Commc'ns Corp. v. Am. Channel, LLC* (*In re Adelphia Commc'ns Corp.*), 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) (same).

18.     In this matter the Debtor is able to demonstrate entitlement to an injunction against the continued prosecution of the Remaining Claims in the I.K. State Court Litigation, because, as discussed above, I.K. seeks to satisfy its baseless claims against the Debtor from Zurich, thereby increasing the size of Zurich's secured claim, diminishing the assets of the Debtor's estate and skewing the allocation thereof to the Debtor's creditors. Furthermore, I.K.'s claims against Zurich will have a deleterious effect on the Debtor's liquidation process as it requires the Debtor to address issues relating to the I.K. State Court Litigation when they could be better utilized to address plan issues or efforts to recover Debtor's outstanding accounts receivable and property.

      **(ii)**     **The Debtor is Entitled to a Section 105(a) Injunction of the I.K. State Court Litigation Which is Necessary to Preserve the Debtor's Estate**

19.     As discussed above, section 105(a) of the Bankruptcy Code provides bankruptcy courts with broad discretion to "[i]ssue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105; *see also Chateaugay*, 93 B.R. at 30 (acknowledging bankruptcy court's authority to extend stay pursuant to its injunctive power under section 105 of the Bankruptcy Code pending a determination regarding the inapplicability of the automatic stay provision of section 362 of the Bankruptcy Code). The provision "is to be construed liberally to enjoin suits that might impede the reorganization

process." *The Lautenberg Found. v. Picard* (*In re Bernard L. Madoff Investment Securities, LLC*), 512 Fed. Appx. 18, 20, (2d Cir. 2013) (quoting *MacArthur Co. v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 837 F.2d 89, 93 (2d Cir. 1988)); *see also In re Lazarus Burman Associates*, 161 B.R. at 897 ("When an action by a creditor of a debtor against a non-debtor third party threatens a debtor's reorganization, the creditor's action may be enjoined pursuant to section 105(a)").

20. The facts of the instant case warrant issuing an injunction. Here, absent an order imposing an injunction in the I.K. State Court Litigation will continue against Zurich completely unchecked, which represents a potentially harmful and disruptive force distracting the Debtor's employees from their key roles in maintaining and recovering the Debtor's assets and instead, force them to address issues related to I.K.'s baseless litigation. Under these circumstances, for the same reasons expressed by the Court in *Lazarus Burman Associates*, the Debtor submits that a stay of the I.K. State Court Litigation against Zurich pursuant to 105(a) of the Bankruptcy Code is necessary here.[3]

21. The Court in *In re United Health Care Organization*, 210 B.R. 228, 232 (Bankr. S.D.N.Y. 1997), found that courts may enjoin proceedings against a non-debtor third-party defendant under section 105(a) of the Bankruptcy Code where "a judgment against the third-party defendant will in effect be a judgment against the debtor", noting that:

---

[3] S*ee Calpine*, 354 B.R. at 49 ("Because non-debtors do not fall within the protection of the automatic stay, at times section 105 must be involved on their behalf to prevent creditors from frustrating an otherwise-viable reorganization effort by pursuing actions against them."); *Otero Mills, Inc. v. Sec. Bank & Trust* (*In re Otero Mills, Inc.*), 21 B.R. 777, 778 (Bankr. D.N.M. 1982), *aff'd*, 25 B.R. 1018 (D.N.M. 1982) (stating that a section 105 injunction is appropriate where the non-debtor litigation would "affect the bankruptcy estate and adversely or detrimentally influence and pressure the debtor through the third party" and ruling that a creditor "may not do indirectly that which he is forbidden to do directly"); *In re United Health Care Organization*, 210 B.R. 228, 233 (Bankr. S.D.N.Y. 1997) (accord).

> One example of a situation where an injunction would be permitted would be a suit against a third party who is entitled to absolute indemnity by the debtor on account of any judgment that might result in the case.

*Id.*[4]

22. There is no question that the indemnity obligation owed by the Debtor to Zurich pursuant to the Zurich Indemnity Agreement, as discussed above, would adversely impact the property of the Debtor, which only provides further justification of the requested injunctive relief pursuant to section 105(a) against continued prosecution of the asserted claims in the I.K. State Court Litigation against Zurich. *See also McHale v. Alvarez* (*In re 1031 Tax Group, LLC*), 397 B.R. 670, 684-85 (Bankr. S.D.N.Y. 2008) (identifying the "increase in the debtor's indemnification liability" as well as the burden and distraction of a suit on the debtor's reorganization efforts as factors to consider in issuing a section 105(a) injunction to stay actions against non-debtors where the court found "a substantial risk that the Debtors face liability for indemnification if the [state court] suits are permitted to continue").

23. Thus, permitting the prosecution of claims against Zurich in the I.K. State Court Litigation and the enforcement of any orders or judgments entered in that action would, among other things, prejudice the Debtor's liquidation efforts and erode funds that constitute assets of the Debtor's estate. The Court should stay such claims and related enforcement activity to

---

[4] *See also McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997); *Calpine*, 354 B.R. 45 (Bankr. S.D.N.Y. 2006) (granting debtors' motion for a section 105(a) injunction of claims against debtors' insurer, since insurer's liability was contingent on the liability of the debtor and to allow claims against the insurer would frustrate the debtors' reorganization effort); *N. Star Contracting Corp. v. McSpedon* (*In re N. Star Contracting Corp.*), 125 B.R. 368 (S.D.N.Y. 1991) (affirming injunction of action against debtor's president where the action essentially was against the debtor as a consequence of the debtor's indemnification obligation to the president); *Motylinski v. Glacial Energy (V.I.), LLC*, 2014 U.S. Dist. LEXIS 98556 (Dist. V.I. July 21, 2014) (staying proceeding in its entirety because debtor-defendant was contractually obligated to defend non-debtor co-defendant against "any liability, legal fees, and costs arising out of these proceedings" such that "'allowing the suit to proceed against the [non-debtor] would, in effect, be allowing the suit to proceed against the bankrupt debtor'" (internal citations omitted)).

preserve the assets of the Debtor's estate without the impediment of the prosecution of claims in the I.K. State Court Litigation.

### (iii) The Debtor Has Satisfied the Requirements for Preliminary and Permanent Injunctions

24. An injunction may be granted under Federal Rule 65 if the following factors are present: (1) irreparable harm to the movant in the absence of an injunction; (2) either (a) likelihood of success on the merits, or (b) a sufficiently serious question going to the merits to make it a fair ground for litigation and a balance of hardships tipping decidedly toward the movant; and (3) granting the injunction will serve the public interest. *See NAACP, Inc. v. Town of East Haven*, 70 F.3d 219, 223 (2d Cir. 1995); *In re Lazarus Burman Associates*, 161 B.R. at 900-901. "The standard for the issuance of a permanent injunction is essentially the same as that for a preliminary injunction except that for the former, plaintiff must prove actual success on the merits and irreparable harm." *Wojnarowicz v. Am. Family Ass'n*, 745 F. Supp. 130, 145 n.13 (S.D.N.Y. 1990); *see also Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006).

### (iv) The Debtor Would be Irreparably Harmed in the Absence of an Injunction

25. As is manifestly clear from the facts described above, the Debtor will be irreparably harmed without preliminary and permanent injunctions to enjoin the litigation of the asserted claims against Zurich in the I.K. State Court Litigation.

26. Moreover, the fact that the Debtor has indemnity obligations to Zurich, and the continued exhaustion of the assets of the Debtor's estate is threatened by continuation of the I.K. State Court Litigation, represents a showing that the irreparable harm standard for preliminary and injunctive relief has been satisfied.

### (v) The Debtor Is Likely to Succeed on the Merits

27. The Debtor is able to satisfy the "likelihood of success" factor, which should be evaluated based on the debtor's "likelihood of confirming a chapter 11 plan." *See United Health Care*, 210 B.R. at 234 (considering likelihood of a successful liquidation and upholding preliminary injunction); *In re Lazarus Burman Associates*, 161 B.R. at 901 ("Likelihood of success" has been defined, for purposes of an injunction in a bankruptcy case, "as the probability of a successful plan of reorganization.").

28. As set forth above, there is no merit to the Remaining Claims, and if forced to litigate at trial, Debtor submits it would successfully assert a claim of $1,305,614.00 under Article 6 of the Terms and Conditions of the Subcontract. *See* Verified Complaint, Exhibit "B".

### (vi) The Balance of Hardships Tips Decidedly in Favor of the Debtor

29. The balance of hardships weighs in favor of issuing a preliminary injunction against the continued prosecution of the asserted claims in the I.K. State Court Litigation against Zurich. Without the injunction, the Debtor faces insurmountable, irreparable harm. Granting the injunction, however, would not significantly prejudice I.K. who has made no efforts to move forward with the I.K. State Court Litigation against the Debtor (or any of the defendants) since at least the Petition Date. The preliminary injunction will not invalidate the rights of I.K. and will merely delay resolution of those rights until a plan of liquidation is confirmed, and Debtor's objection to I.K.'s proof of claim is resolved. *See In re Lazarus Burman Associates*, 161 B.R. at 901 ("The preliminary injunction will not invalidate the rights of NatWest arising out of the Note. It will merely delay the enforcement of those rights . . .").

30. Moreover, the injunction will pave the way for the Debtor to preserve its assets and to treat all unsecured creditors fairly and equitably, consistent with the policy underlying the Bankruptcy Code for equal treatment of creditors.

### (vii) An Injunction Will Serve the Public Interest

31. Granting the preliminary and permanent injunctions will enable the Debtor to focus on developing and formulating a plan of liquidation under Chapter 11 while maintaining, operating and managing its assets and liquidating its business. As stated by the Court in *Lazarus Burman Associates*, "[t]he public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization." 161 B.R. at 901. Permitting the prosecution of claims in the I.K. State Court Litigation against Zurich will only serve to further distract the Debtor because Zurich will understandably require information from the Debtor to defend the claims and materially disrupt its indispensable efforts critical to confirm a plan of liquidation, and the prosecution of its extremely valuable affirmative claims against other parties.

32. Granting a preliminary injunction will serve the public interest by permitting the Debtor to focus on developing and implementing a plan of liquidation, thereby promoting the Debtor's ability to accomplish the salutary goal of ensuring that all similarly-situated creditors are paid the maximum amounts available to them.

33. It is respectfully requested that preliminary injunctive relief be granted without requirement of the payment of security by the Debtor pursuant to Bankruptcy Rule 7065(c). *See Lyondell Chem. Co. v. Centerpoint Energy Gas Servs.* (*In re Lyondell Chem. Co.*), 402 B.R. 571, 595 (Bankr. S.D.N.Y. 2009).

### (viii) A Temporary Restraining Order Staying the I.K. State Court Litigation is Necessary Pending Determination of Debtor's Motion

34. Based upon the above facts and law in support of the Debtor's Verified Complaint in this adversary proceeding and the relief sought by the Debtor's Motion for a declaratory judgment extending the automatic stay to the I.K. State Court Litigation against Zurich and/or preliminary and permanent injunctions enjoining the continued prosecution of the asserted in the I.K. State Court Litigation against Zurich, it is respectfully submitted that the Debtor has made the requisite showing, including immediate and irreparable harm to the Debtor's business, for issuance of a temporary restraining order staying the continuation of the I.K. State Court Litigation, including the enforcement of any orders or judgments entered in the I.K. State Court Litigation, pending determination by this Court of the Debtor's Motion. *See In re Lazarus Burman Associates*, 161 B.R. at 893 (After a hearing, the Court issued a temporary restraining order, "finding for purposes of the TRO, that the prosecution of the State Court Action would cause the Debtors' reorganization efforts to suffer immediate and irreparable harm . . .").

35. It is respectfully requested that the temporary restraining order relief be granted without requirement of the payment of security by the Debtor pursuant to Bankruptcy Rule 7065(c). *See Lyondell,* 402 B.R. 571 at 595.

**CONCLUSION**

36. For the reasons set forth above, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as is appropriate.

Dated: Wantagh, New York
July 2, 2019

                                             **LAMONICA HERBST & MANISCALCO, LLP**
*Attorneys for the Chapter 11 Debtor*

By:    *s/ Adam P. Wofse*
           Adam P. Wofse, Esq.
           Michael T. Rozea, Esq.
           3305 Jerusalem Avenue
           Wantagh, New York 11793
           (516) 826-6500