UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                       :
                                                             :
DURR MECHANICAL CONSTRUCTION,                                :
INC.                                                         :     Chapter 11
                                                             :     Case No. 18-13968 (SMB)
                        Debtor.                              :
-----------------------------------------------------------X
DURR MECHANICAL CONSTRUCTION,                                :
INC.                                                         :
                                                             :
                        Plaintiff,                           :
                                                             :
            against                                          :     Adv. Proc. No. 19-01308
                                                             :
I.K. CONSTRUCTION INC.,                                      :
                                                             :
                        Defendant.                           :
-----------------------------------------------------------X

## MEMORANDUM DECISION GRANTING MOTION TO
## EXTEND AUTOMATIC STAY TO NON-DEBTOR INSURERS

**A P P E A R A N C E S:**

LAMONICA HERBST & MANISCALCO, LLP
3305 Jerusalem Avenue
Wantagh, New York 11793

    Adam P. Wofse, Esq.
    Michael T. Rozea, Esq.
        Of Counsel

*Attorneys for Plaintiff*

Bittiger Elias & Triolo P.C.
12 Route 17 North, Suite 206
Paramus, New Jersey 07652

    Priscilla J. Triolo, Esq.
        Of Counsel

*Attorneys for Defendant*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

The Debtor, Durr Mechanical Construction, Inc. ("Durr"), commenced this adversary proceeding against I.K. Construction Company ("I.K."), a subcontractor of Durr, seeking monetary and injunctive relief and objecting to I.K.'s proof of claim. The matter presently before the Court concerns Durr's motion to extend the automatic stay to non-debtors Zurich North America ("Zurich") and Zurich's affiliate Fidelity & Deposit Company of Maryland ("Fidelity" and together with Zurich, the "Insurers"). Fidelity issued a surety bond ("Payment Bond") which covers Durr's alleged breach of the parties' subcontract and I.K. has sued Fidelity in New Jersey state court ("New Jersey Litigation") to recover on the Payment Bond. The trial is imminent.

For the reasons that follow, the Court concludes that the continuation of the New Jersey Litigation will have an immediate, adverse economic impact on Durr's estate. Accordingly, the Court grants the Durr's motion to extend the automatic stay and enjoins I.K. from continuing to prosecute the New Jersey Litigation against Fidelity.

## BACKGROUND

The relevant factual background is set forth in Durr's adversary complaint ("*Complaint*"),[1] filed contemporaneously with the instant motion ("*Motion*").[2] Where applicable, the background also draws on facts presented in the *Certification of Ian*

---

[1] *Complaint against I.K. Construction Inc.*, dated July 2, 2019 (ECF Doc. # 1). Unless otherwise indicated, "ECF" refers to the electronic docket in this adversary proceeding; "ECF Main" refers to the electronic docket in Durr's main bankruptcy case. The citation "¶" refers to a paragraph in the *Complaint*.

[2] *Debtor's Motion Seeking the Entry of an Order (i) Granting a Declaratory Judgment Extending the Automatic Stay to the I.K. State Court Litigation or, in the Alternative, (ii) Granting a Preliminary and Permanent Injunction*, dated July 2, 2019 (ECF Doc. # 2).

2

*Katwaroo, President of I.K. Construction Inc., in Opposition to the Motion to Extend the Stay* ("*Katwaroo Cert.*") (ECF Doc. # 8-1), which is appended to I.K.'s response ("*Response*").[3]

### A. The Covanta Project

On June 4, 2014, Durr entered into a general contract with Covanta Essex Company ("Covanta") to provide construction management and other services relating to the Essex Baghouse Project, which involved construction of three incinerators at a site in Newark, New Jersey ("Project"). (¶ 23; *Katwaroo Cert.* at ¶¶ 2, 3.) Durr subcontracted with I.K. to perform all structural steel work for the Project and agreed to pay I.K. $4,410,000. (¶¶ 25, 27.) Their agreement was memorialized in a Subcontract Purchase Order executed on August 13, 2014 ("Subcontract").[4] Durr had the right to terminate for delay or failure to perform if I.K. failed to cure its default after three-days' notice:

> In the event the Subcontractor delays the progress of the work or the furnishing of material, or fails in the performance of any of the provisions of this contract, or becomes bankrupt or insolvent, the Contractor shall have the right to cancel this contract upon three days written notice mailed or delivered to Subcontractor at its last known address. In case of such termination, the Subcontractor shall not be entitled to receive any further payments under this contract until the performance of the contract has been completed, at which time if the unpaid balance due Subcontractor exceeds the cost of completion, said amount shall be paid to Subcontractor, but if such expense shall exceed such unpaid balance, then the Subcontractor shall pay the difference to the Contractor. The expenses incurred by the Contractor shall include all damage and cost incurred through the default of the Subcontractor.

---

[3] *See Opposition to the Motion to Extend the Stay filed on behalf of I.K. Construction Inc.*, dated July 14, 2019 (ECF Doc. # 8).

[4] A copy of the Subcontract is annexed to the *Complaint* as Exhibit B.

(Terms & Conditions of the Subcontract, Ex. B, Attachment B ¶ 6, at ECF pp. 8 of 30 (ECF Doc. # 1-2).)

According to Durr, I.K.'s financial condition continued to deteriorate, it had insufficient funds to make payroll and on February 18, 2018, its workers walked off the Project. (¶¶ 37, 38.) That same day, Durr sent I.K a three-day notice stating that the walk off had caused a delay to the progress of the work and warned that if the situation was not corrected within three days, Durr would take corrective action, including terminating the Subcontract.[5] (¶ 39.) When I.K. failed to cure, Durr sent a letter, dated March 2, 2018, terminating the Subcontract ("Termination Letter").[6] (¶¶ 40-42.) The unpaid balance under the Subcontract totaled $533,700 but Durr's actual costs to complete the scope of work totaled $1,305,614. (¶ 51.)

I.K. contends that Durr wrongfully terminated the Subcontract after I.K. completed approximately 95% of the agreed-upon work, including full completion of two of the three incinerators. (*Katwaroo Cert.* at ¶¶ 3, 6.) As of the date of the Termination Letter, I.K. estimates that it needed less than one month to complete its work, all materials necessary to finish the Project were on site, and I.K.'s union workers were still showing up for work every day except Sunday. (*Katwaroo Cert.* at ¶¶ 3, 8.) Moreover, despite Durr's wrongful termination, it retained I.K.'s union workers to complete the Project and the official job minutes do not reflect any delays. (*Katwaroo Cert.* at ¶¶ 10, 11.) I.K. also claims that any delay may have been attributable to a

---

[5] A copy of the three-day notice is annexed to the *Complaint* as Exhibit C.

[6] A copy of the Termination Letter is annexed to the *Complaint* as Exhibit D.

4

separate, intervening contract between Durr and Covanta that interrupted the schedule for I.K.'s Subcontract performance. (*Katwaroo Cert.* at ¶¶ 13, 14.)

### B.  The Payment Bond and Indemnity

On July 1, 2008, Durr and others executed an Agreement of Indemnity with the Insurers ("Indemnity"), which provided in pertinent part:

> The Contractor [*i.e.*, Durr] and Indemnitors shall exonerate, indemnify, and keep indemnified [Zurich and its affiliates, including Fidelity] from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interests, court costs and counsel fees) and from and against any and all such losses and/or expenses which the surety may sustain and incur: (1) by reason of having executed or procured the execution of the Bonds, (2) by reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) in enforcing any of the covenants and conditions of this Agreement.

(Indemnity at ¶ 2.)[7]  Durr's obligations under the Indemnity were secured by all or substantially all of Durr's assets, (Indemnity at ¶ 3), and Zurich filed a UCC-1 Financing Statement in connection with the Indemnity on July 10, 2018. (*See Debtor-In-Possession Loan Agreement and Joint Prosecution Agreement* ("*DIP Agreement*"), Recital D) (Main ECF Doc. # 111-1).)[8]

On July 8, 2008, Fidelity provided Durr with the Payment Bond in favor of various obligees.[9] (*Motion* at 2.)  The parties agree that Payment Bond covers Durr's

---

[7]    A copy of the Indemnity is annexed to the *Complaint* as Exhibit A.

[8]    The *DIP Agreement* was authorized and approved under the *Interim Order (I) Pursuant to 11 U.S.C. §§ 105(A), 361, 362 and 364 of the Bankruptcy Code Authorizing Post-Petition Secured Financing from Zurich American Insurance Company and (II) Pursuant to Federal Rule of Bankruptcy Procedure 9019(A), Authorizing the Debtor and Zurich American Insurance Company to Jointly Prosecute the Debtors Litigated Claims*, dated Jan. 17, 2019 ("*Interim DIP Order*") (Main ECF Doc. # 111).

[9]    The Payment Bond does not appear to have been filed in either the main case or adversary proceeding.

5

unpaid obligations, if any, to I.K. under the Subcontract to the extent set forth in the Payment Bond.

On May 1, 2016, and following the termination of the Subcontract, I.K. filed a Bond Claim against Fidelity, asserting amounts owed under the Payment Bond for "retainage of $489,729.00, change orders of $395,364.80, and a [sic] to be calculated amount for contract payments."[10] (*See* ¶ 44.)  In response to an inquiry from Fidelity, I.K. provided a breakdown of its claim which totaled $1,249,687.35.  (*Complaint*, Ex. C.)  On February 20, 2017, I.K. filed an Amended Bond Claim, which revised I.K.'s total claim upwards to $1,924,128.00.[11] (*See* ¶ 48.)

### C.  The New Jersey Litigation

On February 24, 2017, I.K. filed the New Jersey Litigation against Durr, the Insurers and others.  (*See Complaint filed in the Superior Court of New Jersey*, dated Feb. 24, 2017 ("NJ Complaint") (ECF Doc. # 8-12).)[12]  I.K sought damages in the amount asserted in the Amended Bond Claim.  The New Jersey court subsequently granted Zurich's motion to dismiss.  (*Triolo Cert.* at ¶ 7.)  On August 17, 2017, Durr filed a counterclaim against I.K. for breach of the Subcontract and asserted damages in the sum of $1,305,614.00, corresponding to "$942,500.02 in direct labor, $87,496.95 in tools and material and $308,194.08 for vendors and subcontractors" ("Counterclaim").  (¶¶ 51, 62.)

---

[10]    A copy of the Bond Claim is annexed to the *Complaint* as Exhibit E

[11]    A copy of the Amended Bond Claim is annexed to the *Complaint* as Exhibit F.

[12]    A copy of the NJ Complaint is annexed as Exhibit C to the *Certification of Priscilla J. Triolo, Esq. in Opposition to the Motion to Extend the Stay*, dated July 13, 2019 ("*Triolo Cert.*") (ECF Doc. # 8-9).  The *Triolo Cert.* is appended to the *Response.*

After Durr filed a chapter 11 petition in this Court on December 7, 2018, the New Jersey court issued an order on December 14, 2018 ("Disposition Order")[13] addressing the effect of Durr's bankruptcy on the New Jersey Litigation. It provided, in relevant part, that any party making a claim against Durr had to file a formal application with this Court within thirty days for permission to continue the New Jersey Litigation against Durr. Within thirty days after receiving such permission (*i.e.*, an order granting relief from the automatic stay), either Durr or any party seeking relief against Durr had to file a formal motion to vacate the Disposition Order and restore the claims to the active calendar. Failure to follow the procedure outlined by the New Jersey court would constitute a waiver of all rights to proceed under the New Jersey Litigation caption.

No party sought relief from the automatic stay, and accordingly, Durr was administratively dismissed from the New Jersey Litigation. (¶ 3.) However, I.K's cause of action against Fidelity, the remaining defendant Insurer, remains live and the New Jersey court has scheduled the trial to begin on August 26, 2019.

### D. The Adversary Proceeding

On March 7, 2019, I.K. filed Proof of Claim no. 60-1 ("I.K. Claim"). The I.K. Claim seeks $1,924,128.00, the same amount asserted under the Amended Bond Claim and the NJ Complaint. The I.K. Claim was not filed with any supporting documentation but is clearly premised on Durr's alleged breach of the Subcontract.

With the trial date of the New Jersey Litigation fast approaching, Durr filed the *Complaint* on July 2, 2019 seeking declaratory and/or injunctive relief against I.K. In

---

[13]    A copy of the Disposition Order is annexed as Exhibit G to the *Complaint*.

7

addition to money damages for breach of the Subcontract (duplicating the Counterclaim in the New Jersey Litigation), the *Complaint* seeks to extend the automatic stay to or otherwise enjoin the New Jersey Litigation against the Insurers and includes an objection to the I.K. Claim.

On the same day, Durr filed the *Motion* seeking to extend the automatic stay to the Insurers or to preliminarily enjoin the continuation of the New Jersey Litigation against the Insurers. First, Durr contends that the continuation of the New Jersey Litigation will have an immediate, adverse economic impact on the estate. Durr has an absolute obligation under the Indemnity to indemnify Fidelity for its litigation expenses, including its attorneys' fees. Its indemnity obligation will increase the secured claim under the Indemnity and diminish the recovery available to other creditors. Second, the New Jersey Litigation will necessarily draw Durr and its personnel into protracted litigation on Fidelity's behalf, draining valuable time and resources from Durr at a critical juncture in the bankruptcy case.[14] I.K.'s principal objection to the *Motion* is that enjoining the New Jersey Litigation would inequitably compel I.K. to re-assert its breach of contract claims after litigating them in the Superior Court for nearly two-and-a-half years and less than a month from trial. (*Response* at 11-12; *see also Hr'g Tr. (7/15)*, at 10:22-11:1, 26:19-23.) I.K. also states generally that Durr has failed to show any immediate, adverse economic consequence that would follow from the continued prosecution of the New Jersey Litigation against the Insurers. (*Id.* at 8.)

---

[14]    At a hearing held on August 5, 2019, Durr decided to forego an evidentiary hearing on the second ground and proceed solely on the first prong of the *Motion*.

## DISCUSSION

As a rule, the automatic stay under 11 U.S.C. § 362(a) does not apply to non-debtors. *See Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 58 (2d Cir. 2000) ("It is well established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.") (citation and quotation marks omitted); *see also McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509–10 (3d Cir. 1997) ("[I]t is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor.").

However, in *Queenie v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003), the Second Circuit recognized a limited exception to this general rule, holding that the automatic stay may extend to non-debtors in circumstances where a claim against the non-debtor will have an immediate, adverse economic impact on the estate. *Accord Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 212 (2d Cir. 2014). The *Queenie* Court provided three specific examples that would warrant an extension of the stay: (1) a claim to establish an obligation as to which the debtor is a guarantor, *id.* at 287 (citing *McCartney*, 106 F.3d at 510–11); (2) a claim against the debtor's insurer, *id.* at 287-88 (citing *Johns–Manville Corp. v. Asbestos Litig. Grp.* (*In re Johns–Manville Corp.*), 26 B.R. 420, 435–36 (Bankr. S.D.N.Y 1983)); and (3) actions where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant[.]" *Id.* at 288 (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

9

Durr contends that it continues to be the real party defendant in the New Jersey Litigation because it has an absolute obligation to indemnify Fidelity. In *A.H. Robins*, cited by the *Queenie* Court, the Fourth Circuit articulated the circumstances under which a debtor and non-debtor will have the requisite identity of interests to warrant an extension of the stay:

> This "unusual situation," it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute.

788 F.2d at 999; *accord Tenas-Reynard v. Palermo Taxi Inc.*, No. 14 CIV. 6974 (PGG), 2016 WL 1276451, at *6 (S.D.N.Y. Mar. 30, 2016) (where debtor's liability was "automatic and co-extensive" with non-debtor defendant's liability, the automatic stay extended to non-debtor because "a claim against [the non-debtor] will, when entered, constitute a claim (and hence, an 'immediate adverse economic consequence') against [the debtor's] estate.") (citation omitted); *Robert Plan Corp. v. Liberty Mut. Ins. Co.*, No. 09-CV-1930 (JS), 2010 WL 1193151 (E.D.N.Y. Mar. 23, 2010) (stay extended to contempt action against the officers of debtor corporation because the debtor was required to indemnify them if they lost and, win or lose, was required to indemnify them for their legal fees).

Here, Fidelity's liability under the Payment Bond is wholly derivative of Durr's liability for its alleged breach of the Subcontract and Durr has an absolute obligation to indemnify Fidelity for its losses should it lose and its legal expenses and attorneys' fees, win or lose. Furthermore, the indemnification obligation is secured by Durr's assets.

10

Thus, the continuation of the New Jersey Litigation against Fidelity will have an immediate, adverse economic impact on the estate and its unsecured creditors.

The adverse impact is exacerbated, in part, by I.K.'s own actions and inactions. I.K. did not seek relief from the automatic stay in accordance with the Disposition Order to continue the New Jersey Litigation against Durr. As a result, the claims against Durr were dismissed. I.K. subsequently filed the I.K. Claim, as was its right, but in doing so, it submitted to the equitable jurisdiction of this Court to decide its claim that Durr breached the Subcontract and owes damages. *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) ("[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power.") (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989)); *see also Stern v. Marshall*, 564 U.S. 462, 518 (2011) ("By filing a proof of claim, the creditor agrees to the bankruptcy court's resolution of that claim, and if the creditor wins, the creditor will receive a share of the distribution of the bankruptcy estate.").[15] Durr filed the adversary proceeding to object to the Claim and to assert its own counterclaim under 28 U.S.C. § 157(b)(2)(b)(C) and Fed. R. Bankr. P. 3007(b). Consequently, unless the Court extends the automatic stay, Durr will have to pay for the same trial twice, once in New Jersey (against Fidelity) and once in this Court (as part of the claims allowance process).

---

[15] I.K. implores the Court to deny the *Motion* in order to preserve its purported right to a jury trial, (*see Response* at 10 ("There is no reason why IK should be prohibited from proceeding at trial to prove the substance of the Bond Claim, as amended, and obtain a verdict.")), but that right was forfeited once I.K. filed a claim against the Durr bankruptcy estate. *Langenkamp,* 498 U.S. at 45 ("Respondents filed claims against the bankruptcy estate" and "[c]onsequently, they were not entitled to a jury trial").

11

Furthermore, the trial of the I.K. Claim objection and Durr's counterclaim will resolve the entire controversy because the resolution of who breached the Subcontract is integral to the allowance or disallowance of the I.K. Claim. At a prior hearing, the Insurers' counsel stated that the Insurers would be amenable to a procedure by which all disputes would be tried in this Court. In this way, all of the claims can be tried once instead of twice, and in one court instead of two.

Accordingly, the motion to extend the automatic stay is granted. The Court has considered I.K.'s remaining arguments and concludes that they lack merit. Durr is directed to settle an order on notice to I.K. and the Insurers.

Dated:  New York, New York
        August 12, 2019

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge